UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-22754-CIV-COOKE/GOODMAN

JERALD KATZOFF,

      Plaintiff,

v.

NCL BAHAMAS, LTD.,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS ON MOTION TO STRIKE/*DAUBERT* MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS, EDWARD WANKEL

Jerald Katzoff alleges that he was injured while dancing in a lounge aboard the *Norwegian Sky* cruise ship because he tripped on a sound monitor on the dance floor. In this lawsuit against NCL (BAHAMAS) LTD, Katzoff retained Edward Wankel as an expert witness on issues relating to the placement of the sound monitor, sometimes called the stage monitor. By way of summary, Wankel, who has a bachelor's degree in Business Administration and a master's degree in Public Administration, opined that NCL was negligent in myriad ways. NCL filed a *Daubert* motion to exclude Wankel's expert opinion testimony. [ECF No. 97]. Katzoff filed an opposition response, and NCL filed a reply [ECF Nos. 102; 105]. United States District Judge Marcia G. Cooke referred the *Daubert* motion to the Undersigned. [ECF No. 98].

For the reasons discussed below, the Undersigned **respectfully recommends** that Judge Cooke **grant** the motion. Wankel's proposed opinions have several problems, ranging from concerns about his qualifications to the absence of reliable methodology. At bottom, though, Wankel's opinions would not be helpful to a jury. His core opinion -- that NCL negligently placed a stage monitor on the dance floor where passengers were dancing, rather than on the stage -- concerns a lay matter that the jury can easily understand and decide without Wankel's opinion. His other opinions either contain too little analysis, are outside of his area of expertise, and/or are impermissibly conclusory. Plaintiff never addressed those challenges in his opposition response. The Undersigned will provide a more comprehensive discussion of the facts and legal principles and then analyze the *Daubert* challenge.

## I.    Factual Background

Wankel's Report contains both "opinions" and "conclusions." Rather than paraphrase the opinions and conclusions, I will quote them here verbatim:

a.  Opinions

1.    Based on a reasonable degree of professional certainty, the Defendant did not exercise due care in the set up of their stage for Mr. Katzoff and other passengers onboard the Norwegian Cruise Line Vessel SKY, on August 16, 2018 in a safe manner, by creating a tripping hazard for passengers dancing in the Outrigger lounge. The careless

placement of the monitor caused the Plaintiff to trip and fall over a stage monitor that was placed in a careless and dangerous manner. (*See* CCTV Video of Accident).

2.      The Defendant did not follow their own policies and procedures as stated in the Defendants SMART Training Campaign. As stated therein, the Defendant acknowledges that inadequate lighting and other contributors such as the environment cause or contribute to trip and falls. NCL acknowledges that trip and falls are preventable by following a risk-based approach and "identifying high risk areas." Hazards and obstructions should be clearly marked according to their policy.

3.      It is my further opinion, based on a reasonable degree of professional certainty, that Defendant should have known that inadequate and improper set up procedures and safety inspections by under qualified staff, on the vessel SKY, over a long period of time, contributed to creating a dangerous condition for passengers at large. It should have been anticipated that the guest population on a large ship, who rely on the vessel's staff for their safety, will include a variety of people from all age brackets and physical and mental conditions. The fact that the ships technical personnel who were responsible for the maintenance, set up of equipment and the safety of the dancing space, should have known that improper placement of stage monitors on the dance floor, rather than on the stage where it belongs, created an unreasonable and avoidable danger to passengers.

3.      The Defendants failed to follow standards and guidelines from audio visual

3

professionals, manufacturers of stage monitors and the performers themselves, as testified to by Alexandra Jaime (performer) under contract with the Defendant, that stage monitors should be placed on the stage. (*See* Attachments # 3,4 and 5).[1]

4.      Defendant failed to have as crew qualified stage technicians trained to competently set up a stage at the Outrigger Lounge. The Outrigger Lounge was unsafe for the Plaintiff and other NCL passengers on August 16, 2018.

5.      There were reasonable alternatives for available practical passenger safety and due care at the time and place alleged in the complaint. They include:

- The Defendants ship employees could have set the stage monitor on a raised stand.

- The Defendant could have placed the stage monitor off the side of the dance floor to make it visible to passengers.

- The Defendants could have warned Plaintiff and other passengers about the speaker placement danger.

- The Defendant could have eliminated the use of a stage monitor which was not necessary for a small venue.

- The Defendant could [have] used smaller monitors which many performers prefer to eliminat[e] the stage monitor. *See* attached manufacturers recommendation. (*See* Attachment # 3).

- As observed on the video, the dance floor area was dark and the passengers['] visibility was limited by the spot lights, strobes, and colored lights flashing. Objects on the dance floor would have been more conspicuous by simplifying the lighting.

---

[1]      Wankel's report contains two opinions designated as numbered paragraph 3.

- The lighting conditions on the CCTV video is a misleading representation of the visual appearance to passengers on the dance floor. This video was taken between 10:30 PM and 11 PM on August 16, 2018. The stage monitor was black. In my opinion the Defendant should have enhanced the lighting to improve safety of passengers using this busy traffic area and dance floor.

- The Defendants knew or should have known that most people are drinking alcoholic beverages at social dancing venues especially with a bar right in back of the stage. While drinking alcohol it more difficult for passengers to see obstacles on and around the dance floor. As testified to by defendant representatives in their deposition most of the previous accidents where guests tripped over speakers, their breathalyzers test showed high levels of alcohol by those patrons. So again, in my opinion they knew this was commonplace and did nothing to reduce the potential risk of accidents in the **Outrigger Lounge.** The Plaintiff was not intoxicated at the time and place. (See review of Documents Deposition of Brett Berman) Page # 6.

- There are other options for the placement of stage monitors or none at all in my opinion. The music is also distracting, there were no staff to monitor guests, and The Defendant knew about prior tripping accidents over speakers. And Defendant knew its passenger population was at higher risk for falls compared to general populations. This in my opinion was a recipe for accidents to happen as Defendant states, "Older adults, expected and encouraged to drink a  lot, have less agility, poorer eyesight and hearing among other naturally occurring health issues due to age," in my opinion.

[ECF No. 97-2, pp. 10-12].

    b. <u>Conclusions</u>

Based on my investigation and evaluation of the circumstances involved in this case, it is my professional opinion that the Defendant did not exercise reasonable and due care in providing a safe environment at the Outrigger Lounge stage and dance floor on the NCL, SKY vessel on August 16, 2018. In evaluating the subject defendants conduct with regard to proper stage set up procedures and proper safety inspections, and lighting

to protect the Plaintiff Jerald Katzoff, I can state, based on the information available at this time with a reasonable degree of of [stet] professional certainty, that the Defendants failed in its duty to exercise reasonable care to protect the Plaintiff along with other guest[s] and dancers on August 16, 2018.

Specifically, the Defendant provided improper stage setup and safety inspections, which failed to conform to an accepted standards [stet] of care, inattentive supervision for the claimant and lack of foresight, resulting in insufficient safety and failure to protect the plaintiff against a known risk of injury. The Defendants [stet] were obligated to anticipate the potential dangers posed by the inappropriate placement of an obstacle (stage monitor), insufficient lighting and for not taking any and all safety precautions necessary to ensure the safety and wellbeing of the Plaintiff and all other guests on August 16, 2018. Indeed it appears the sound quality and the performers safety were a priority over cruise passenger safety.

Furthermore, in my opinion the Defendant, first allowed the continuous placement of an obstacle on the dance floor knowing that former guests have tripped over speakers in and around on similar dance floors and rooms on ships but did not warn their guests either by appropriate signage, verbal warning from entertainers or by other warnings such as cones around the corners of the stage monitor, raising stage monitor[s] making them more visible which left a safety hazard by not doing so. Ultimately, this led to the Plaintiffs [stet] fall on August 16, 2018. [ECF No. 97-2, p. 13].

c. <u>Wankel's Academic and Experience-Based Background and Purported Expertise</u>

Wankel has a bachelor's degree in Business Administration and a master's degree in Public Administration. He has more than thirty-five years of experience in recreation and education planning, administration, maintenance park and playground safety. He served as the Commissioner of the Town of Islip Department of Parks, Recreation and Cultural Affairs, for twelve years, as well as the Deputy Supervisor of the Town of Islip. In addition, he was the Commissioner of Parks, Recreation and Conservation for Suffolk County, NY for more than three years.

Wankel was appointed by the Pataki Administration as the Deputy Commissioner of Parks, Recreation and Historic Preservation for the State of New York in 1995 and served until December of 1998. In that capacity, he oversaw the Long Island and New York City Regions. Mr. Wankel served as Vice President of the Suffolk County Police Athletic League, as well as the Treasurer of The New York State Recreation and Parks Society.

On the other hand, he is not an engineer, biomechanical engineer, medical professional, accident reconstructionist, or a human factors expert. Wankel also does not hold any degrees or licenses in lighting, nor does he have any formal training in forensic video analysis. He is also not an architect, nor does he hold any degrees in hospitality.

Wankel has never been employed with a cruise line, has never designed a cruise ship, or a lounge or music venue on a cruise ship, nor has he designed a dance floor on a

cruise ship. He has no professional experience with cruise ship dance spaces. Wankel also

is not a professional musician and has never personally used a monitor. He also has no

experience designing or selling sound equipment, including monitors. Wankel is also not

a toxicologist.

Wankel's CV does not mention any experience in setting up equipment for live

musical performances, and he has never published anything regarding setting up audio

equipment for live musical performances.[2] He has also never been employed as a lounge

technician. Wankel has also never testified in any other matter involving the set-up of

audio equipment for live musical performances.

In fact, an ALM Experts' website, which NCL attached as an exhibit to its motion,

represents Wankel's primary area of expertise to be "golf courses." [ECF No. 97-5, p. 1].

Wankel's ALM page represents that he is an expert with many areas of expertise:

Accident Investigation & Failure, Analysis; Athletic Accidents; Athletic Facilities;

Camping; Campsites; Falls, Fitness; Golf; Golf Carts; Golf Course Maintenance; Golf

Courses; Health Club Facilities; Parks & Playgrounds; Parks and Recreation; Parks &

Recreation Accidents; Parks & Recreation Facilities; Parks & Recreation Management and

Parks and Recreation Safety.

---

[2]     His expert report says he "**assist[ed]** with the setup of stages for over 150 outdoor
concert performances, for both spectators and dancers, over a period of fifteen years."
[ECF No. 97-2, p. 10 (emphasis added)].

Wankel's CV also makes no mention of experience with cruise ships or other maritime vessels.

In his three-page opposition [ECF No. 102] to the 16-page *Daubert* motion, Katzoff's primary argument is that Wankel's "deposition testimony regarding his extensive experience both supervising and participating in sound equipment setup for live concerts" is sufficient to give him the requisite expertise to offer expert opinions about the stage/sound monitor's placement. [ECF No. 102, p. 2]. He did not address the issue of whether Wankel's opinions would help the jury.

Relying on Wankel's experience as a parks and recreation supervisor, Katzoff contends that Wankel "supervised approximately 150 parks" and notes that his duties "included supervising setup and management for approximately 12 to 13 outdoor concerts a year," which total approximately 150 concerts over the 15-year period. *Id.* Katzoff's opposition memorandum further notes that "while initially he would merely assist in equipment setup as directed by others," he learned "after 'the first couple of years . . . how to do it myself,'" including "where equipment should go." *Id.* (citing ECF No. 97-4 at 33:1-3; 33:16-22; 35:19-36:7).

Katzoff conceded that Wankel "is not a professional sound technician," but points out that he "did consult sources from the music sound industry in formulating his opinions." *Id.* at p. 3. He also argued that these sources merely confirmed his own opinions derived from his experience. Katzoff emphasized that Wankel's opinions about

9

the proper placement of sound equipment "in concert venues" are "derived principally from his fifteen years of experience supervising and participating in sound equipment for approximately 150 concerts." *Id.*

Katzoff's memorandum did not discuss Wankel's experience with indoor music venues, where people are dancing on a dance floor, nor did it discuss the placement of sound equipment for a band playing in a lounge aboard a cruise ship.

As noted in NCL's reply, though, Katzoff's memorandum discussed only Wankel's alleged experience in sound equipment setup; it did not seek to justify any of the other opinions in his report, such as the qualifications and training of NCL's employees, whether they followed guidelines, the adequacy of the lighting, that the music distracted Plaintiff, and the frequency with which passengers drink alcohol on cruise ships.

During his deposition, Wankel summarized his experience in setting up outdoor concerts at county parks:

> Back in the '70s we started a concert program. I **assisted.** I was at every single one of those events, and I would help assist the – performers put their equipment up.  I learned over the first couple of years pretty much, you know, where equipment should go, and I helped with that.  I wasn't – I wasn't – **I wasn't the – the technician.**
>
> I didn't know a lot more than the technicians on your cruise ship, but I helped and over the years. I learned. And that's how I learned.  But **my experience is in park safety.** I am **not a technician that sets up stages**. I never – I didn't do that for a living. I helped – (emphasis added).

[ECF No. 97-4, pp. 35-36 (emphasis added)].

d. Other Factors

Wankel did not inspect the lounge, the stage, the dance floor, the stage monitor, or any other equipment. He did not take any measurements of these things and did not know their dimensions. Wankel did watch the CCTV video footage of the incident, which, NCL points out, "is something any lay person can do." [ECF No. 105, p. 4]. But Wankel does not know how far the stage was from the CCTV camera, and he has not done any forensic examination of the video.

## II. Applicable Legal Principles

The district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home*, 996 F.2d 266, 268 (11th Cir. 1993). Federal Rule of Evidence 702 governs the admission of expert testimony, as explained and refined by the United States Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 582 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Under this framework, district courts are charged with a gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will
help the trier of fact to understand the evidence or to determine a fact in
issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts
of the case.

Fed. R. Evid. 702.

To fulfill its obligation under *Daubert*, a trial court engages in a three-part inquiry:
(1) whether the expert is qualified to testify competently; (2) whether the methodology
used to reach the conclusions is sufficiently reliable; and (3) whether the testimony assists
the trier of fact to understand the evidence or to determine a fact at issue. *Rink v.
Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

As an overarching principle, the district court must "ensure that speculative,
unreliable expert testimony does not reach the jury." *McCorvey*, 298 F.3d at 1256. "In order
to be admissible, an expert's testimony must be based on 'more than subjective belief or
unsupported speculation.'" *Haggerty v. Upjohn Co.*, 950 F. Supp. 1160, 1167 (S.D. Fla. 1996)
(quoting *Daubert*, 509 U.S. at 590). There should be "[s]cientific method; good grounds
and appropriate validation." *U.S. v. Masferrer*, 367 F. Supp. 2d 1365, 1371 (S.D. Fla. 2005).

Reliability of the methodology requires "an exacting analysis of the proffered
expert's methodology." *McCorvey*, 298 F.3d at 1257. That analysis takes into consideration
a number of factors, including: (1) whether the expert's methodology can be, and has

12

been, tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method employed has a known rate of error; and (4) whether the technique is generally accepted in the scientific community. *Rink*, 400 F.3d at 1292; *see also Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

These reliability factors, however, are non-exhaustive. *Kumho Tire*, 526 U.S. at 150; *Rink*, 400 F.3d at 1292. Thus, "[i]n evaluating the reliability of an expert's method . . . a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink*, 400 F.3d at 1293 n.7. The burden of establishing the reliability of an expert's opinions rests on the proponent of that expert's testimony. *U.S. v. Frazier*, 387 F.3d 1244, 1244 (11th Cir. 2004). The party proffering the expert also has the burden of "laying the proper foundation for the admission of the expert testimony . . . and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

"It is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC–8, Inc.*, 326 F.3d at 1341. Thus, the district court cannot exclude an expert because it believes the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the

traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC–8, Inc.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596).

A less-than-perfect expert opinion may still be admitted, even if it contains gaps. *See In re Trasylol Prods. Liab. Litig.*, No. 08–MD–01928, 2010 WL 1489793, at \*6 (S.D. Fla. Feb. 24, 2010) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.").

Furthermore, courts "must be careful not to conflate questions of admissibility of expert testimony with the weight appropriately to be accorded to such testimony by the fact finder." *Id.* at \*7 (quoting *Quiet Tech*, 326 F.3d at 1341).

On the other hand, courts do not hesitate to exclude purported expert testimony which does not pass muster. *See Allison v. McGhan Medical Corp.*, 184 F.3d 1300 (11th Cir. 1999) (affirming summary judgment in favor of silicone breast implant manufacturers and upholding district court's exclusion of proffered expert's causation testimony under *Daubert*); *Rink*, 400 F.3d 1286 (affirming exclusion of expert testimony in products liability and toxic trespass claims against pesticide manufacturer and therefore affirming summary judgment for defendant); *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) (finding trial court in criminal case did not abuse its discretion in excluding proffered expert testimony from forensic investigator); *Hendrix v. Evenflo Co., Inc.*, 609 F.3d 1183 (11th Cir. 2010) (affirming defense summary judgment for infant car seat manufacturer in products liability lawsuit involving child who sustained traumatic brain injuries and

upholding trial court ruling which excluded expert testimony because the experts were not sufficiently reliable).

### III.    Analysis

"[W]here an expert relies mainly on experience as the basis for an opinion, "the witness *must explain* [1] how that experience leads to the conclusion reached, [2] why that experience is a sufficient basis for the opinion, and [3] how that experience is reliably applied to the facts." *Payne v. C.R. Bard, Inc.,* 606 F. App'x 940, 942-943 (11th Cir. 2015) (emphasis added).

The Undersigned is not convinced that Wankel has the necessary qualifications to provide expert opinion testimony about the monitor placement or the placement of warning signs on the dance floor. The mere fact that Wankel was a parks commissioner or assisted others in placing speakers at large outdoor concerts does not necessarily equate to having the appropriate qualifications to provide the opinions he seeks to testify about at trial.

But even if Wankel has sufficient qualifications (which is still very much in doubt), his primary opinion concerns a basic matter which is not beyond the understanding of a lay person: whether NCL acted unreasonably in having its employees place the stage monitor on the dance floor, in front of the stage. Given this reality, his opinion would not be of help to the jury.

"[E]xpert testimony is not helpful if it simply addresses 'lay matters which the jury is capable of understanding and deciding without the expert's help.'" *Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 375 (S.D.N.Y. 2014) (quoting *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001)); *see also In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009).

Helpful expert testimony is admissible because it illuminates matters beyond the understanding of the average lay person. *Frazier*, 387 F.3d at 1262 (11th Cir. 2004). Expert testimony that "offers nothing more than what lawyers for the parties can argue in closing arguments" generally will not assist the trier of fact and will be excluded. *Id.* at 1262–63.

The instant lawsuit is not the first federal lawsuit in which Wankel's proposed expert opinions were challenged as being unhelpful. *See McHugh v. United States*, No. 18-cv-788, 2019 WL 2763845 (S.D.N.Y. July 2, 2019) (excluding Wankel's proposed expert testimony about allegedly faulty bearings in roller skates rented at a Government-operated park as not helpful and noting that the jury would be fully capable of performing the simple analysis he performed).

Although Wankel performed a test (which did not replicate the relevant conditions) and also took the skates apart in *McHugh*, he did not perform any test or do an inspection here. Instead, he merely, in effect, proclaimed that the placement of the stage monitor on the dance floor (in a location not on the stage) was risky and

16

unreasonable. But any juror is capable of reaching that basic conclusion, which means his proffered opinion improperly usurps the factfinder's role. *See id.* at *4; *Crawford v. Franklin Credit Mgmt. Corp.*, No. 08-CV-6293, 2015 WL 13703301, at *6 (S.D.N.Y. Jan. 22, 2015) (explaining that jury is fully capable of performing "the same simple mathematical calculation that Smith performs in his report"); *see also In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (excluding expert testimony where it consisted of a "narrative of the case which a juror is equally capable of constructing").

Courts in our circuit readily exclude proposed expert testimony when it is not helpful to the jury. *See generally Umana-Fowler v. NCL (BAHAMAS) Ltd.*, 49 F. Supp. 3d 1120, 1123 (S.D. Fla. 2014) (excluding opinions of crowd control expert as not helpful after noting that "this case is [simply] about an accident where one passenger bumped into another"); *Lopez v. Allstate Fire and Casualty Ins. Co.*, No. 14-20654, 2015 WL 5584898, at *6 (S.D. Fla. Sept. 23, 2015) (excluding as not helpful opinion of attorney experienced in casualty and insurance law in third-party insurance bad faith action because his opinion "relate[s] to issues of fact that the jury is capable of determining without the assistance of an expert" and because his opinions "offer nothing more than what lawyers for the parties can argue in closing arguments"); *O'Malley v. Royal Caribbean Cruises, Ltd.*, No. 17-cv-21225, 2018 WL 2970728 (S.D. Fla. Jun. 13, 2018) (excluding purported expert testimony of chief officer aboard passenger ships in personal injury lawsuit against cruise ship by a passenger); *Easterwood v. Carnival Corp.*, No. 19-cv-22932, 2020 WL 6880369 (S.D.

17

Fla. Nov. 23, 2020) (granting defense motion to strike Plaintiff's expert witness opinions as unhelpful in a **bench** trial).

The average juror does not need an expert witness to provide opinions on whether it is negligent to place a stage monitor speaker on a dance floor in front of the stage, where cruise ship passengers are dancing. Thus, I find that Wankel's proposed expert testimony about the placement of the stage monitor speaker should be excluded.

In its motion, NCL raised the following arguments about Wankel's *other* opinions: (1)Wankel's opinions concerning insufficient lighting are inadmissible; (2) Wankel's opinions regarding the training and skills of Norwegian's crewmembers, the adequacy of their personnel files, and that they should have performed a walkthrough inspection are inadmissible; (3) Wankel's opinions that Norwegian should have known that most people drink alcoholic beverages are inadmissible; (4) Wankel's opinion that the music distracted Plaintiff is inadmissible; (5) Wankel's opinions that there were insufficient staff to monitor guests and that cruise ship passengers are at a higher risk of falls than the general population are inadmissible; (6) Wankel's opinion that Norwegian put sound quality and the safety of its performers over cruise passenger safety is inadmissible; (7) the legal conclusions contained in Wankel's report are inadmissible; and (8) Wankel's lay opinions about the subject CCTV footage are inadmissible. [ECF No. 97, pp. 11-16].

But Plaintiff did not argue against those challenges in his brief opposition response. Instead, Plaintiff focuses solely on Wankel's opinion that "the stage monitor

should have been placed on the stage where it belonged rather than on the dance floor where it posed a tripping hazard for dancers such as Mr. KATZOFF." [ECF No. 102, p. 1].

Under this scenario, Plaintiff's arguments about Wankel's other opinions are abandoned and the Court finds those so-called opinions to be inadmissible. *See GolTV, Inc. v. Fox Sports Latin America Ltd.*, 277 F. Supp. 3d 1301, n. 7 (S.D. Fla. 2017) (noting that when a party fails to respond to an argument in a responsive brief, the argument can be considered abandoned); *Balbin v. Concepcion*, 411 F. Supp. 3d 1340, 1361 (S.D. Fla. 2019); *Kuber v. Prudential Ins. Co. of Am.*, No. 19-80151-CIV, 2019 WL 7899139, at *4 (S.D. Fla. May 31, 2019); *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (quoting *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001)); *Cardwell v. Auburn Univ. Montgomery*, 941 F. Supp. 2d 1322, 1329 (M.D. Ala. 2013) (granting in part motion to dismiss after the plaintiff effectively conceded an argument by failing to respond to it in the responsive brief).

## IV.    Conclusion

For the reasons discussed above, the Undersigned **respectfully recommends** that Judge Cooke **grant** NCL's Motion to Strike/*Daubert* Motion to Exclude Plaintiff's Expert Witness, Edward Wankel.

## V.    Objections

The parties will have fourteen (14) days from the date of being served with a copy

of this Report and Recommendations within which to file written objections, if any, with United States District Judge Marcia G. Cooke. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on April 19, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All counsel of record